IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLANN ENTERPRISES, LLC and NATIVE PLAINS EXCAVATING & CONTRACTING, LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>TIM WILSON, an individual; RICK'S REPAIR & CONSTRUCTION, LLC, a Texas limited liability company; RICARDO FRAGOSO, an individual; TITAN BUSINESS SERVICES, a Texas limited liability company; ANDY ANDREWS, an individual; KIM ANDREWS, an individual; ANDREWS MINING CONSULTING, LLC, an Oklahoma limited liability company; and ALEXANDER KERANEN, an individual.<br><br>        Defendants. | Case No. 25-CV-00108-GKF-MTS |

**OPINION AND ORDER**

This matter comes before the court on the Motion to Dismiss with Prejudice [Doc. 51] of defendants Ricardo Fragoso and Rick's Repair, LLC and the Motion to Dismiss [Doc. 53] of defendants Tim Wilson and Titan Business Services. For the reasons set forth below, the motions are denied.

**I.    Background**

On March 6, 2025, plaintiffs Clann Enterprises, LLC and Native Plains Excavating & Contracting, LLC initiated this matter against the following defendants: (1) Tim Wilson; (2) Rick's Repair & Construction, LLC; (3) Ricardo Fragoso; (4) Titan Business Services; (5) Andy Andrews; (6) Kim Andrews; (7) Andrews Mining Consulting, LLC; and (8) Alexander Keranen. The Complaint includes the following factual allegations:

Clann Enterprises is a private equity holding company which wholly owns several business entities, including Native Plains. [Doc. 2, p. 3, ¶ 18]. Native Plains is a contracting company that engages in, among other things, frac sand mining services on a contractual basis. [*Id.* ¶ 19]. Mr. Andy Andrews and Mr. Keranen were previously management-level employees of Clann Enterprises/Native Plains. *See* [*Id.* at p. 12, ¶ 71].

Native Plains performed work for Hi-Crush and Atlas Sand. [*Id.* at p. 3, ¶ 19]. Mr. Wilson is a former employee of Hi-Crush and Atlas Sand, whose responsibility it was to select contractors for mining services and other services for his employers. [*Id.* ¶ 16]. Mr. Wilson is also the owner of Titan Business Services. [*Id.* ¶ 17].

Rick's Repair is a contracting business that performs services for frac sand and other mining plants. [*Id.* at p. 4, ¶ 22]. Mr. Fragoso is Rick's Repair's sole member. [*Id.* at p. 2, ¶ 3].

During Mr. Wilson's employment with Hi-Crush, Mr. Wilson and Mr. Fragoso established a "pay to play" operation wherein Hi-Crush would be required to pay Rick's Repair on a monthly basis for work which was never performed—essentially, a "kickback." [Doc. 2, p. 4, ¶¶ 22-23]. Mr. Wilson represented to Mr. Andrews and Mr. Keranen that Native Plains would not receive the contract with Hi-Crush or other work which Wilson could control unless Native Plains paid the kickback to Rick's Repair. [*Id.* ¶ 24]. Mr. Wilson informed Mr. Andrews that Rick's Repair would then pay Wilson, after laundering the funds through an unknown account. [*Id.*]. Mr. Wilson, through Titan Business Services, would then pay kickback funds to Mr. Andrews as an incentive to allow the fraudulent conduct to proceed and continue. [*Id.*]. Mr. Andrews and defendant Ms. Kimberly Andrews then caused the funds to be deposited into a bank account in the name of Andrews Mining Consulting, LLC. [*Id.* at p. 8, ¶ 38]. Ms. Andrews was allegedly aware that the source of the funds originated from Clann. [*Id.* ¶ 39]. Mr. Wilson allegedly utilized the

funds to purchase and build a home on certain real property, commonly known as 5510 County Road 7670, Lubbock, Texas, 79424. [*Id.* at pp. 12-13, ¶¶ 75-76].

Plaintiffs allege that, pursuant to the scheme and over a period of fifteen months, Rick's Repair issued thirty-four (34) fraudulent invoices, totaling $1,804,081.27, to Native Plains. [*Id.* at pp. 5-6, ¶¶ 24-29]. Mr. Andrews ensured that each invoice was approved for payment, although Rick's Repair allegedly never performed any services or provided any materials of any kind to Native Plains. [*Id.* ¶¶ 27, 29].

Plaintiffs allege that the kickback scheme extended with respect to a bid for another contract that Mr. Wilson could influence his employer to award to Native Plains. [*Id.* at p. 7, ¶ 32]. Mr. Andrews and/or Mr. Kernanen included the kickback in plaintiffs' internal budget prepared for the purpose of pricing the potential work. [*Id.*]. Further, plaintiffs allege that they are aware that Mr. Wilson and Mr. Fragoso conducted a similar kickback scheme prior to the commencement of the fraud against plaintiffs. [*Id.* at p. 6, ¶ 30].

Based on these factual allegations, the Complaint includes the following causes of action: (1) civil RICO, 18 U.S.C. § 1962(B); (2) civil RICO, 18 U.S.C. § 1962(C); (3) civil RICO, 18 U.S.C. § 1962(D); (4) fraud; (5) tortious interference; (6) unjust enrichment; (7) constructive trust; (8) breach of fiduciary duty; and (9) constructive trust to real property related to the property commonly known as 5510 County Road 7670, Lubbock, Texas, 79424.

Mr. Fragoso and Rick's Repair subsequently filed a motion to dismiss based on (1) standing and (2) failure to plausibly allege a pattern of racketeering activity. [Doc. 51]. Three days later, Mr. Wilson and Titan Business Services separately filed a motion to dismiss based on both standing and failure to sufficient allege a pattern of racketeering activity. [Doc. 53]. Because the moving defendants raise the same arguments, the court considers the motions together.

**II.     Legal Standard**

In reviewing a Rule 12(b)(6) motion to dismiss, the court "accept[s] a plaintiff's well-pleaded factual allegations as true and determine[s] whether the plaintiff has provided 'enough facts to state a claim to relief that is plausible on its face.'" *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016) (quoting *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014)). "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient." *Estate of Lockett ex rel. Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016) (quoting *Twombly,* 550 U.S. at 555). The court accepts as true all factual allegations, but the tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)).

But, "in alleging fraud or mistake," a higher standard applies. Fed. R. Civ. P. 9(b). "[A] party must state with particularity the circumstances constituting fraud or mistake." *Id.* "More specifically, [the Tenth Circuit] requires a complaint alleging fraud to 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the

consequences thereof.'" *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)). "Rule 9(b)'s purpose is to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based." *Id.*

**III.   Analysis**

As previously stated, Rick's Repair/Mr. Fragoso and Titan Business Services/Mr. Wilson make two arguments. First, defendants argue that Clann, the "parent" company of Native, lacks standing because Clann cannot show it suffered a harm other than derivative damages from Native. Second, defendants argue plaintiffs have failed to sufficiently allege a RICO "pattern." The court separately considers each argument.

   A.   *Standing*

To establish standing, a plaintiff must show "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1286 (10th Cir. 2024). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002). This is because, on a motion to dismiss, the general allegations are presumed to "embrace those specific facts that are necessary to support the claim." *Id*. Further, at the pleading stage of civil RICO actions, a plaintiff is not required to plead with the particularity required by Rule 9(b). *Id*. As explained by the Tenth Circuit:

> [a] shareholder or guarantor lacks standing to assert RICO . . . claims when their losses are only derivative of a corporations. [A] plaintiff who can identify some way in which he or she suffered personally and directly as a result of the defendants

5

> conduct—some way in which his or her losses are not derivative of the corporation's losses—can proceed with or without the corporation in the case.

*Niemi v. Lasshofer*, 770 F.3d 1331, 1346 (10th Cir. 2014) (internal citation omitted); *see also Schrag v Dinges*, 825 F. Supp. 954, 957 (D. Kan. 1993); *Harris v. Orange S.A.*, 636 F. App'x 476, 481 (11th Cir. 2015) ("The critical question in determining whether a shareholder has standing to file a RICO action is whether or not the plaintiff suffered a harm that stands separate and distinct from the harm suffered by the corporation.").

Plaintiffs allege that "[d]efendants directed their conspiracy to fraudulently steal funds from the *Plaintiffs*," and that there were a total of thirty-four fraudulent invoices sent to and paid by Native. [Doc. 2, at pp. 3, 5-6, ¶¶ 13, 25-29]. Further, it is alleged that "the source of the funds originat[ed] from Clann." [*Id*. at p. 8, ¶ 39]. Accepting these allegations as true, and drawing all reasonable inferences in plaintiffs' favor, the court may reasonably infer that Clann was directly injured and, therefore, plaintiffs have sufficiently plead facts consistent with Clann's standing.

B. RICO "Pattern"

Defendants next argue that plaintiffs have failed to allege a sufficient RICO "pattern." [Doc. 51, at p. 5].

To avoid dismissal, plaintiffs must plausibly allege each defendant "(1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." *George*, 833 F.3d at 1248. Plaintiffs must also allege that the racketeering predicates are related, and they amount to, or pose a risk of, continued racketeering activity. *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *Apache Tribe of Okla. v. Brown*, 966 F. Supp. 2d. 1188, 1196 (W.D. Okla. 2013); *UMB Bank, N.A. v. Monson*, No. 21-CV-2504-EFM, 2025 WL 1580894, at **1-2 (D. Kan. June 4, 2025); *Skurkey v. Daniel*, No. CIV-22-496-R, 2023 WL 101946, at *3 (W.D. Okla. Jan. 4, 2023).

Thus, RICO requires "continuity" plus relationship. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n.14 (1985).

The Tenth Circuit has explained "[t]he relationship test is not a cumbersome one for a RICO plaintiff." *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1555 (10th Cir. 1992) (internal quotations omitted). Plaintiffs have alleged the predicate acts have the same purpose, results, participants, victims, and methods of commission; therefore, the relationship test is satisfied. *Id.*

The continuity requirement is more difficult to meet. *Id.* Continuity may be either open-ended or close-ended. *H.J. Inc.*, 492 U.S. at 241. The court focuses its inquiry on close-ended continuity.

Close-ended continuity may be asserted by plausibly alleging "a series of related predicates extending over a substantial period of time." *H. J. Inc.*, 492 U.S. at 242. It is not necessary to show a threat of future repetition for close-ended continuity. *Johnson v. Heath*, 56 F.4th 851, 860 (10th Cir. 2022). There are two elements the court considers: (1) the duration of the related acts, and (2) the extensiveness of the RICO enterprise scheme. *Id.*

1. <u>Duration</u>

Although there is no minimum amount of time necessary, if the predicate acts extend only over a few months and do not threaten future criminal conduct, the continuity requirement is not satisfied. *Id.* For example, in *H. J. Inc.*, the plaintiff's complaint alleged the predicate acts extended over a period of at least six years. *H. J. Inc.*, 492 U.S. at 250 (holding a period of six years may satisfy the continuity requirement). Subsequently, in *Resolution Trust Corp.* the court found a duration of seven to eighteen months to be sufficient. *Resol. Tr. Corp. v. Stone*, 998 F.2d

1534, 1544 (10th Cir. 1993). *Id*. Most recently, in *Johnson*, the court found a span of about eleven years sufficient. *Johnson*, 56 F.4th at 860-61.

Based on the court's review of the Complaint, plaintiffs have satisfied the duration element of close-ended continuity as plaintiffs allege that defendants sent thirty-four fraudulent invoices to plaintiffs over a span of fifteen months. [Doc. 2 at pp. 5-6]. As stated above, a period of seven to eighteen months has been found to be sufficient; therefore plaintiffs have satisfied the duration element for close-ended continuity. *Resol. Tr. Corp.*, 998 F.2d at 1544.

  2. <u>Extensiveness</u>

As previously stated, duration alone may not establish close-ended continuity. *Resol. Tr. Corp.*, 998 F.2d at 1544. Rather, the court must also consider the extensiveness of the scheme. *Id*. To determine the extensiveness of the RICO enterprise scheme, the court considers the following factors: (1) number of victims; (2) number of racketeering acts; (3) the variety of racketeering acts; (4) whether the injuries caused were distinct; (5) the size and complexity of the scheme; (6) the nature and character of the enterprise or unlawful activity. *Id*. at 1543-44. "No factor is required or dispositive." *Johnson*, 56 F.4th at 860-861. The factors are meant to guide a "natural and commonsense result." *Id*. Multiple ongoing activities are more likely to satisfy the continuity requirement than several sporadic acts. *Resol. Tr. Corp.*, 998 F.2d at 1543; *see also Petco Petroleum Corp. v. West*, No. 19-CV-439-GKF-SH, 2021 WL 6053682, at *5 (N.D. Okla. July 12, 2021). A scheme with "one discrete goal" will rarely support a finding of continuity. *Sil-Flo v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990); *see also Modoc Nation v. Bohl*, No. 19-CV-588-JDR-JFJ, 2024 WL 4643701, at *5 (N.D. Okla. Oct. 30, 2024). Hence, a scheme that has the potential to effectuate into the future will support a finding of continuity. *UMB Bank, N.A. v. Monson*, No. 21-CV-2504-EFM, 2025 WL 1580894, at *6 (D. Kan. June 4, 2025).

Considering factors (1) and (3), plaintiffs do not allege a variety of predicate acts. *See generally* [Doc. 2]; *see also Johnson*, 56 F.4th at 861 ("[T]he underlying fraudulent conduct hardly varied."). However, in addition to allegations that defendants' conduct injured Native and Clann, plaintiffs assert that Wilson and Fragoso previously conducted a similar scheme. [Doc. 2, p. 6]. Further, plaintiffs allege that defendants attempted to begin a new kickback scheme utilizing the same means and attempted to continue the scheme with another facility. [*Id.* at pp. 6-7]. Thus, plaintiffs include allegations from which the court may reasonably infer that the scheme had the potential to extend to other persons or entities. Thus, although factor (3) weighs against continuity, factor (1) weighs slightly in its favor. *See Indep. Drug Wholesalers Grp. v. Denton*, 833 F. Supp. 1507, 1515-16 (D. Kan. 1993).

Factor (2) also weighs in favor of continuity because there are a substantial number—thirty-four—of alleged related, similar predicate acts. *Johnson*, 56 F.4th at 861 (fifty predicate acts can suggest an extensive scheme).

Factor (4) assesses whether the injuries caused were distinct. Plaintiffs allege the fraudulent invoices were separate transactions for separate repairs and services; therefore constituting "separate injuries." *Resol. Tr. Corp.*, 998 F.2d at 1545; *see also U.S. Textiles, Inc. v. Anheuser-Busch Co.*, 911 F.2d 1261, 1269 (7th Cir. 1990) (identical economic injuries suffered over the course of two years stemming from the same contract are not distinct). Thus, factor (4) also weighs in plaintiffs' favor.

Turning to factors (5) and (6), the court considers the number of perpetrators involved, the amount of planning, and level of management. *Resol. Tr. Corp.*, 998 F.2d at 1545. Similar to *Resolution Trust*, this case involves numerous perpetrators and the alleged damages exceed $1,000,000.00; therefore, factor (5) weighs in favor of plaintiffs. Finally, the nature of the scheme

suggests continuity. When a scheme has a limited purpose, courts typically conclude there is no continuity. *Id*. However, when there is not a single goal to be accomplished by the scheme, courts have concluded continuity exists. *Id*. ("The scheme was limited only by the ability of … defendants to keep it afloat; they had, for example, no finite number of lots to sell or single goal that would be accomplished in the near future."). Plaintiffs allege that the purpose of the scheme was for defendants to earn income from the kickbacks, and defendants attempted to continue the scheme at another facility. [Doc. 2, at pp. 6-7]. Based on these allegations, the court may infer that defendants did not have an arbitrary amount of money, or single goal, to accomplish.

Defendants rely on *Sil-Flo*, where the court held the plaintiffs had not sufficiently plead facts to establish a pattern of racketeering. [Doc. 51 at p. 7 (citing *Sil-Flo v. SFHC, Inc.*, 917 F.2d 1507, 1516 (10th Cir. 1990)]. There, a business deal to sell a company fell through due to fraudulent transactions. The court found that plaintiffs had alleged a close-ended series of predicate acts that constituted a single scheme to accomplish "one discrete goal." *Id*. Further, the predicate acts were "directed at only one individual with no potential to extend to other persons or entities." *Id*. *Sil-Flo* is not analogous to the case at bar. Rather, like in *Resolution Trust Corp.* and *Petco Petroleum Corp.*, as previously stated, the court may reasonably infer that defendants' alleged conduct had the potential to extend to other persons or entities and was "limited only by the ability of [defendants] to keep it afloat." *Resol, Tr. Corp.*, 998 F.2d at 1545; *Petco Petroleum Corp.*, 2021 WL 6053682, at *5.

Taking the allegations as true, plaintiffs have plausibly alleged facts that show an ongoing scheme and the court may infer there was no end goal. Thus, plaintiffs have sufficiently alleged close-ended continuity.[1]

**IV.    Conclusion**

WHEREFORE, the Motion to Dismiss with Prejudice [Doc. 51] of defendants Ricardo Fragoso and Rick's Repair, LLC and the Motion to Dismiss [Doc. 53] of defendants Tim Wilson and Titan Business Services are denied.

IT IS SO ORDERED this 30th day of September, 2025.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

---

[1] Additionally, defendants argue plaintiffs have not alleged sufficient facts to show a threat of future criminal conduct, and therefore have not satisfied the requirements for open-ended continuity. [Doc. 70 at p. 2]. To allege open-ended continuity, a plaintiff must show "the racketeering acts involved implicit or explicit threats of repetition, that they formed the operations of an association that exists for criminal purposes, or that they were defendants' regular way of conducting a legitimate enterprise." *Johnson v. Heath*, 56 F.4th 851, 859-60 (10th Cir. 2022). It is mandatory that a plaintiff plausibly allege a threat of future fraudulent activity to establish open-ended continuity. *See id.* Plaintiffs have alleged that defendants conducted a similar scheme prior to the scheme against the plaintiffs. [Doc. 2 at p. 6]. Based on this allegation, the court may infer a threat of future criminal conduct as the court may infer that the fraudulent activity was defendants' regular way of conducting business. Further, at this stage of the litigation, plaintiffs are required to plead facts consistent with Rule 8's general notice pleading, not Rule 9. *Robbins*, 300 F.3d at 1211. Therefore, plaintiffs have plausibly alleged facts to satisfy the requirements of open-ended continuity.