IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLANN ENTERPRISES, LLC and NATIVE PLAINS EXCAVATING & CONTRACTING, LLC,<br><br>          Plaintiffs,<br><br>v.<br><br>TIM WILSON, an individual; RICK'S REPAIR & CONSTRUCTION, LLC, a Texas limited liability company; RICARDO FRAGOSO, an individual; TITAN BUSINESS SERVICES, a Texas limited liability company; ANDY ANDREWS, an individual; KIM ANDREWS, an individual; ANDREWS MINING CONSULTING, LLC, an Oklahoma limited liability company; and ALEXANDER KERANEN, an individual.<br><br>          Defendants. | Case No. 25-CV-00108-GKF-MTS |

**OPINION AND ORDER**

This matter comes before the court on the Motion to Dismiss with Prejudice [Doc. 62] of defendant Kim Andrews. For the reasons set forth below, the motion is granted in part and denied in part.

**I.      Background**

On March 6, 2025, plaintiffs Clann Enterprises, LLC and Native Plains Excavating & Contracting, LLC initiated this matter against the following defendants: (1) Tim Wilson; (2) Rick's Repair & Construction, LLC; (3) Ricardo Fragoso; (4) Titan Business Services; (5) Andy Andrews; (6) Kim Andrews; (7) Andrews Mining Consulting, LLC; and (8) Alexander Keranen. The Complaint includes the following factual allegations:

Clann Enterprises is a private equity holding company which wholly owns several business entities, including Native Plains. [Doc. 2, p. 3, ¶ 18]. Native Plains is a contracting company that engages in, among other things, frac sand mining services on a contractual basis. [*Id.* ¶ 19]. Mr. Andy Andrews and Mr. Keranen were previously management-level employees of Clann Enterprises/Native Plains. *See* [*Id.* at p. 12, ¶ 71].

Native Plains performed work for Hi-Crush and Atlas Sand. [*Id.* at p. 3, ¶ 19]. Mr. Wilson is a former employee of Hi-Crush and Atlas Sand, whose responsibility it was to select contractors for mining services and other services for his employers. [*Id.* ¶ 16]. Mr. Wilson is also the owner of Titan Business Services. [*Id.* ¶ 17].

Rick's Repair is a contracting business that performs services for frac sand and other mining plants. [*Id.* at p. 4, ¶ 22]. Mr. Fragoso is Rick's Repair's sole member. [*Id.* at p. 2, ¶ 3].

During Mr. Wilson's employment with Hi-Crush, Mr. Wilson and Mr. Fragoso established a "pay to play" operation wherein Hi-Crush would be required to pay Rick's Repair on a monthly basis for work which was never performed—essentially, a "kickback." [*Id.* at p. 4, ¶¶ 22-23]. Mr. Wilson represented to Mr. Andrews and Mr. Keranen that Native Plains would not receive the contract with Hi-Crush or other work which Wilson could control unless Native Plains paid the kickback to Rick's Repair. [*Id.* ¶ 24]. Mr. Wilson informed Mr. Andrews that Rick's Repair would then pay Wilson, after laundering the funds through an unknown account. [*Id.*]. Mr. Wilson, through Titan Business Services, would then pay kickback funds to Mr. Andrews as an incentive to allow the fraudulent conduct to proceed and continue. [*Id.*]. Mr. Andrews and defendant Ms. Kimberly Andrews then caused the funds to be deposited into a bank account in the name of Andrews Mining Consulting, LLC, an entity controlled by the Andrews. [*Id.* at p. 8, ¶ 38]. Specifically, Ms. Andrews received and endorsed checks from Titan Business Solutions to

Andrews Mining, and was allegedly aware both that the funds originated from Clann and of the fraudulent nature of the scheme. [*Id.* ¶ 39].

Mr. Wilson allegedly utilized the funds he received to purchase and build a home on certain real property, commonly known as 5510 County Road 7670, Lubbock, Texas, 79424. [*Id.* at pp. 12-13, ¶¶ 75-76].

Plaintiffs allege that, pursuant to the scheme and over a period of fifteen months, Rick's Repair issued thirty-four (34) fraudulent invoices, totaling $1,804,081.27, to Native Plains. [*Id.* at pp. 5-6, ¶¶ 24-29]. Mr. Andrews ensured that each invoice was approved for payment, although Rick's Repair allegedly never performed any services or provided any materials of any kind to Native Plains. [*Id.* ¶¶ 27, 29].

Plaintiffs allege that the kickback scheme extended with respect to a bid for another contract that Mr. Wilson could influence his employer to award to Native Plains. [*Id.* at p. 7, ¶ 32]. Mr. Andrews and/or Mr. Kernanen included the kickback in plaintiffs' internal budget prepared for the purpose of pricing the potential work. [*Id.*]. Further, plaintiffs allege that they are aware that Mr. Wilson and Mr. Fragoso conducted a similar kickback scheme prior to the commencement of the fraud against plaintiffs. [*Id.* at p. 6, ¶ 30].

Based on these factual allegations, the Complaint includes the following causes of action: (1) civil RICO, 18 U.S.C. § 1962(b); (2) civil RICO, 18 U.S.C. § 1962(c); (3) civil RICO, 18 U.S.C. § 1962(d); (4) fraud; (5) tortious interference; (6) unjust enrichment; (7) constructive trust; (8) breach of fiduciary duty; and (9) constructive trust to real property related to the property commonly known as 5510 County Road 7670, Lubbock, Texas, 79424.

Ms. Andrews filed a motion to dismiss [Doc. 62], and plaintiffs responded in opposition. [Doc. 73]. Ms. Andrews did not file a reply.

**II.     Legal Standard**

In reviewing a Rule 12(b)(6) motion to dismiss, the court "accept[s] a plaintiff's well-pleaded factual allegations as true and determine[s] whether the plaintiff has provided 'enough facts to state a claim to relief that is plausible on its face.'" *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016) (quoting *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014)). "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient." *Estate of Lockett ex rel. Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016) (quoting *Twombly,* 550 U.S. at 555). The court accepts as true all factual allegations, but the tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)).

But, "in alleging fraud or mistake," a higher standard applies. Fed. R. Civ. P. 9(b). "[A] party must state with particularity the circumstances constituting fraud or mistake." *Id.* "More specifically, [the Tenth Circuit] requires a complaint alleging fraud to 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the

consequences thereof.'" *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)). "Rule 9(b)'s purpose is to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based." *Id.*

## III. Analysis

Ms. Andrews seeks dismissal of all claims against her, which the court construes to be as follows: (1) civil RICO, 18 U.S.C. § 1962(b); (2) civil RICO, 18 U.S.C. § 1962(c); (3) civil RICO, 18 U.S.C. § 1962(d); (4) fraud; (5) tortious interference; (6) unjust enrichment; (7) constructive trust; and (8) breach of fiduciary duty.[1]

### *A. Civil RICO, 18 U.S.C. §§ 1962(b), (c)*

Ms. Andrews requests dismissal of the § 1962(c) claim because plaintiffs fail to adequately allege: (1) predicate acts by Ms. Andrews; (2) Ms. Andrews's participation in the conduct of the enterprise; and (3) proximate cause or injury from Ms. Andrews.

#### 1. Predicate Acts/Pattern of Racketeering Activity

Section 1962(c) provides that, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "[T]o avoid dismissal, the plaintiffs must plausibly allege that [defendants] each (1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." *George*

---

[1] The court does not construe plaintiffs' ninth claim for relief, which seeks a constructive trust related to the real property commonly known as 5510 County Road 7670, Lubbock, Texas, 79424, as being asserted against Ms. Andrews. Nor do the parties offer any argument with respect to that claim in the briefs.

*v. Urb. Settlement Servs.,* 833 F.3d 1242, 1248 (10th Cir. 2016). "The term 'racketeering activity' is defined to include a host of so-called predicate acts," including wire fraud. *Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer,* 764 F.3d 1268, 1274 (10th Cir. 2014) (quoting *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008)); *see also* 18 U.S.C. § 1961(1). A "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5).

To be subject to liability under § 1962(c), a defendant must commit two or more predicate acts. *See San Miguel Hosp. Corp. v. Publix Supermarket, Inc.*, No. 23-CV-00903-KWR-JFR, 2025 WL 872972, at *22 (D.N.M. Mar. 19, 2025). Thus, "[t]o sustain a claim under 18 U.S.C. § 1962(c), a plaintiff must plead that <u>each defendant</u> engaged in a pattern of racketeering activity by committing at least two predicate acts." *In re HomeAdvisor, Inc. Litig.*, 491 F. Supp. 3d 879, 893 (D. Colo. 2020).

Plaintiffs assert that they have adequately alleged that Ms. Andrews committed two predicate acts of wire fraud pursuant to 18 U.S.C. § 3143 and knowingly transporting and/or receiving funds obtained by fraud pursuant to 18 U.S.C. §§ 2314 and 2315. [Doc. 73, pp. 8-9]. The U.S. Court of Appeals for the Tenth Circuit has recognized that "[t]he particularity requirement of Rule 9(b), Federal Rules of Civil Procedure, applies to claims of mail and wire fraud." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006). Likewise, "[w]here allegations of interstate or foreign transport of stolen property allege that the property has been taken by fraud, the allegations must meet the heightened requirement of Rule 9(b)." *Malvar Egerique v. Chowaiki*, No. 19-CIV-3110-KPF, 2020 WL 1974228, at *10 (S.D.N.Y. Apr. 24, 2020), *vacated in part on other grounds by Weiss v. David Benrimon Fine Art LLC*, No. 20-3842-CV, 2021 WL 6128437 (2d Cir. Dec. 28, 2021); *see also Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 989 (10th Cir. 1992) ("Under Rule 9(b), plaintiffs must sufficiently allege each element of a RICO

6

violation and its predicate acts of racketeering with particularity."); *Sorensen v. Polukoff*, 784 F. App'x 572, 578-79 (10th Cir. 2019) (unpublished).[2] Thus, "plaintiffs must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *George,* 833 F.3d at 1254 (quoting *Koch v. Koch Indus.,* 203 F.3d 1202, 1236 (10th Cir. 2000)); *see also Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1277 (10th Cir. 2023) ("Put differently, a complaint stating the 'who, what, where, when, and how' of the allege fraud gives a defendant the requisite level of notice required under Rule 9(b)").

Plaintiffs allege that Ms. Andrews "receiv[ed] and endors[ed] checks from Titan Business Solutions to Andrews Mining Consultants," [Doc. 2, p. 8, ¶ 39], but includes no allegations as to the specific dates, number, or amounts (contents) of the checks. Thus, plaintiffs have not plead the "time" ("where") or "contents" ("what" and "how") of the false representations as required by Rule 9.

However, in the context of applying Rule 9 to a civil RICO claim, the Tenth Circuit has directed district courts to "consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive control," *George,* 833 F.3d at 1255. Further, the Circuit has recognized that "not every allegation of fraudulent misconduct must be pleaded with particularity for a complaint to survive at the motion to dismiss stage." *Clinton,* 63 F.4th at 1280. Rather, "even where 'not *all* of the plaintiffs' allegations' are pleaded with particularity, a complaint may nonetheless satisfy Rule 9(b)'s requirements when its allegations are sufficiently particularized when '*taken as a whole*.'" *Id.* (internal citation omitted) (quoting *George*, 833 F.3d at 1257).

---

[2] "Unpublished decisions are not precedential but may be cited for their persuasive value." 10th Cir. R. 32.1(A).

Here, plaintiffs include "general allegations" as to Ms. Andrews's receipt and endorsement of checks from Titan Business to Andrews Mining Consulting. *See* [Doc. 2, p. 8, ¶¶ 38-39]. However, plaintiffs also allege that Wilson paid to Mr. Andrews kickback funds that he received from the "pay to play" operation "as an incentive to allow the fraudulent conduct to proceed and continue," and that he caused those funds to be paid to Andrews through Titan Business Services. [Doc. 2, pp. 4-5, ¶ 24]; *see also* [Doc. 2, p. 8, ¶ 36 (alleging that Titan (and Rick's Repair) received income from racketeering activity as pass-through entities for Wilson, Fragoso, and Andy Andrews)]. The Complaint goes on to specifically identify the RICO predicate acts undertaken by Wilson (with Rick's Repair) to obtain the kickback payments. *See* [Doc. 2, pp. 5-6, ¶¶ 25-29]. With respect to these acts—that is, the wire fraud—the Complaint includes allegations that Rick's Repair issued false invoices to Native Plains, and, further, identifies the date of each fraudulent invoice, the invoice number, the false statement included therein, and the amount of the invoice. [Doc. 2, p. 5-6, ¶¶ 22, 28]. Thus, the Complaint identifies the "who, what, where, when, and how'" of the "pay to play" operation and has therefore satisfied Rule 9's particularity requirement as to those predicate acts. *See Clinton*, 63 F.4th at 1277.

Here, although the allegations regarding the specific predicate acts undertaken by Ms. Andrews are not sufficiently particular, the allegations of the Complaint, "*taken as a whole*," are particularized and "sufficiently apprise[]" Ms. Andrews of her involvement in the fraudulent conduct. *Clinton,* 63 F.4th at 1280. Although plaintiffs include no specific allegations regarding the dates of receipt and endorsement of the checks from Titan Business, the court may reasonably infer that such transactions occurred within the same timeframe as the "pay to play" scheme and represent some percentage of the amounts of those invoices, given that plaintiffs allege that the payments were to incentivize Mr. Andrews to allow the fraudulent conduct to continue. Thus,

8

although "accusations against [Wilson and Rick's Repair] dominate the plaintiffs' complaint," and "specific accusations against [Ms. Andrews] are sparse," the Complaint satisfies Rule 9's requirements and plausibly alleges that Ms. Andrews engaged in a pattern of racketeering activity. *See George*, 833 F.3d at 1256-57; *Clinton,* 63 F.4th at 1280; *see also George*, 833 F.3d at 1257 ("Rule 9(b) does not require omniscience; rather the rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim."). For this reason, the motion to dismiss is denied insofar as it is premised upon failure to sufficiently allege predicate acts by Ms. Andrews.

2. <u>Participation</u>

Ms. Andrews next asserts that plaintiffs have failed to plausibly allege that Ms. Andrews participated in the operation or management of the enterprise.

In addition to predicate acts, "RICO requires a showing that the defendant 'conduct[ed] or participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs.'" *George*, 833 F.3d at 1251 (quoting 18 U.S.C. §1962(c)). As explained by the Tenth Circuit,

> This, in turn, requires a showing that the defendant "participate[d] in the operation or management of the enterprise itself." *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993). Under *Reves'* operation or management test, the defendant must have "some part in directing" the enterprise's affairs. *Id.* at 179. But importantly, the defendant need not have "primary responsibility for the enterprise's affairs," "a formal position in the enterprise," or "significant control over or within an enterprise." *Id.* at 179 & n.4. Instead, even "lower rung participants in the enterprise who are under the direction of upper management" may be liable under RICO if they have "some part" in operating or managing the enterprise's affairs. *Id.* at 179. Nevertheless, a defendant must do more than simply provide, through its regular course of business, goods and services that ultimately benefit the enterprise. *Id.* at 1101-02.

*George,* 833 F.3d at 1251 (some internal citations omitted).

Plaintiffs assert that Ms. Andrews "knowingly and actively participated in the operation of the enterprise by facilitating the transfer of stolen funds in furtherance of the RICO enterprise and

9

by knowingly using/benefiting from the stolen funds." [Doc. 73, p. 10].  However, "[t]he knowing receipt of fraudulently obtained funds does not constitute participation in the 'operation and management' of the enterprise." *Congregacion de la Mision Provincia de Venezuela v. Curi*, 978 F. Supp. 435, 450 (E.D.N.Y. 1997); *see also Related Cos., L.P. v. Ruthling*, No. 17-CV-04175-JSR-DF, 2019 WL 10947100, at *5 (S.D.N.Y. July 23, 2019); *Marshall v. Goguen*, 604 F. Supp. 3d 980, 1020 (D. Mont. 2022).  Thus, plaintiffs have failed to plausibly allege that Ms. Andrews participated in the enterprise's affairs and the § 1962(c) civil RICO claim against her fails for this reason.[3]

Likewise, plaintiffs have failed to plausibly allege a § 1962(b) claim.[4]  Section 1962(b) "makes it illegal for 'any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in . . . interstate . . . commerce." *Tal*, 453 F.3d at 1268.  "To state a

---

[3] Because the court concludes that plaintiffs have failed to plausibly allege Ms. Andrews's participation in the RICO conspiracy, the court does not consider her argument that plaintiffs have fails to plausibly allege proximate cause or injury from Ms. Andrews.  *See* [Doc. 62, p. 4].  However, the court notes that plaintiffs have plausibly alleged that the "pay to play" scheme operated by Wilson and Rick's Repair led directly to plaintiffs' injuries—that is, but for and proximate causation.  *See CGC Holding Co. v. Hutchens*, 974 F.3d 1201, 1213 (10th Cir. 2020).

[4] Neither Ms. Andrews nor plaintiffs offer any specific argument with respect to the § 1962(b) claim.  However, as previously stated, Ms. Andrews asserts that "all claims against [her] must be dismissed." [Doc. 62, pp. 2-3].  Further, as recognized by the U.S. Supreme Court and Tenth Circuit, the "party presentation principle," which "relies 'on the parties to frame the issues for decision,'" *Meek v. Martin,* 74 F.4th 1223, 1249 n.14 (10th Cir. 2023) (quoting *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020)), "is supple, not ironclad," and "as such, 'a court is not hidebound by the precise arguments of counsel.'"  *Meek,* 74 F.4th at 1250 n. 14 (quoting *Sineneng-Smith,* 140 S. Ct. at 1579).  Here, Ms. Andrews seeks dismissal of all claims asserted against her and specifically argues that "[m]ere awareness or passive receipt of funds is insufficient to support a civil RICO claim where it is not alleged the subject defendant participated in operation or management of enterprise itself." [Doc. 62, pp. 3-4].  Under the circumstances, it is appropriate for the court to consider whether plaintiffs have plausibly alleged a § 1962(b) claim against Ms. Andrews.  *See Meek*, 74 F.4th at 1250 n.14 (quoting *Sineneng-Smith*, 140 S.Ct. at 1579) ("[T]here are no doubt circumstances in which a modest initiating role for a court is appropriate.").

claim under section 1962(b), the plaintiff must allege the defendant (1) acquired or maintained an interest in or control of (2) an enterprise engaged in interstate commerce (3) through a pattern (4) of racketeering activity, or collection of an unlawful debt." *Id.* As explained by the Tenth Circuit, "[s]ection 1962(b) claims are relatively uncommon because the first element requires sufficient allegations of 'an interest in or control of' an enterprise, as opposed to the less demanding requirement of 'association' with the enterprise in section 1962(c) claims." *Id.* The element requires "some ownership of the enterprise or an ability to exercise dominion over it." *Id.* at 1268-69.

As set forth above, plaintiffs have failed to satisfy the "less demanding" requirement of § 1962(c) and therefore have failed to plausibly allege a § 1962(b) civil RICO claim. Specifically, the Complaint includes no allegations from which the court may reasonably infer that Ms. Andrews owned or had the ability to exercise dominion over the "pay to play" scheme. Thus, Ms. Andrews's motion to dismiss is granted with respect to plaintiffs' § 1962(b) and § 1962(c) claims.

  B.  *Civil RICO, 18 U.S.C. § 1962(d)*

Section 1962(d) "makes it illegal for 'any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.'" *Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006). "To conspire" is used in "its conventional sense" calling for application of "certain well-established principles." *Salinas v. United States*, 522 U.S. 52, 63 (1997). Accordingly, to plausibly allege a claim under § 1962(d), plaintiffs must assert "(1) an agreement by two or more persons to violate the law; (2) knowledge of the objectives of the conspiracy; (3) knowing and voluntary involvement in the conspiracy; and (4) interdependence among co-conspirators." *San Miguel Hosp. Corp.*, 2025 WL 872972, at *28 (quoting *United States v. Foy*, 641 F.3d 455, 465

11

(10th Cir. 2011)).[5]  Here, Ms. Andrews challenges only whether plaintiffs have plausibly alleged that she agreed to violate the law.  *See* [Doc. 62, p. 4].

The Tenth Circuit has recognized that "[a] conspiratorial agreement . . . need not be express so long as its existence can plausibly be inferred from the defendant['s] words and actions and the interdependence of activities and persons involved."  *CGC Holding Co.*, 974 F.3d at 1211.  In this regard, interdependence "may be shown when a defendant's activities 'facilitated the endeavors of other alleged co-conspirators or facilitated the venture as a whole.'"  *United States v. Pickel*, 863 F.3d 1240, 1252-53 (10th Cir. 2017) (quoting *United States v. Acosta-Gallardo*, 65 F.3d 1109, 1124 (10th Cir. 2011)).

As previously stated, plaintiffs allege that Ms. Andrews was aware of both the origin of the funds and the fraudulent nature of the scheme and, knowing both of those things, she caused the funds from Titan to be deposited into Andrews Mining's bank account.  [Doc. 2, p. 8, ¶¶ 38-39].  Further, plaintiffs allege that the payments to Mr. Andrews were "an incentive to allow the fraudulent conduct to proceed and continue."  [*Id.* at p. 4, ¶¶ 22, 24].  Based on these allegations, the court can reasonably infer that Ms. Andrews "knew about and agreed to facilitate the scheme."  *See Salinas*, 522 U.S. at 66.  Thus, plaintiffs have plausibly alleged that Ms. Andrews agreed to facilitate a pattern of racketeering activity.  *See Salinas*, 522 U.S. at 65; *CGC Holding Co.*, 974 F.3d at 1211.  Thus, the motion to dismiss plaintiffs' § 1962(d) claim is denied.

C.   *State Law Claims*

Finally, Ms. Andrews contends that plaintiffs' state-law claims fail as a matter of law due to plaintiffs' failure to allege certain conduct by Ms. Andrews.  Specifically, Ms. Andrews asserts

---

[5] Unlike § 1962(c), § 1962(d) does not require that each defendant commit, or agree to commit, two predicate (overt) acts.  *See Salinas*, 522 U.S. at 64-66.

that plaintiffs have not alleged a misrepresentation upon which plaintiffs relied as required for fraud, interference with any contractual relationship by Ms. Andrews as required for tortious interference, unjust retention of funds by Ms. Andrews as required for unjust enrichment, or that Ms. Andrews was an employee, agent, or fiduciary of plaintiffs for purposes of the breach of fiduciary duty claim. [Doc. 62, pp. 4-5]. Additionally, Ms. Andrews argues that plaintiffs have not identified any property in Ms. Andrews' name to which a constructive trust could apply.

At the outset, the court notes that these arguments are minimally briefed. Further, while plaintiffs filed a fulsome response, Ms. Andrews did not file a reply to address the counter-arguments raised therein. Under the circumstances, the court is hesitant to consider Ms. Andrews's arguments, but, in the interest of moving this matter forward, the court does so.

First, as previously stated, the Complaint includes allegations that Ms. Andrews deposited funds fraudulently obtained from plaintiffs into a bank account owned by Andrews Mining, an entity owned and operated by Andy Andrews and over which Ms. Andrews allegedly exercised control. [Doc. 2, pp. 2, 8 ¶¶ 7, 38-39]. Thus, the court may reasonably infer that Ms. Andrews has received a benefit at plaintiffs' expense and therefore plaintiffs have adequately alleged unjust retention of funds by Ms. Andrews. *See Lapkin v. Garland Bloodworth, Inc.*, 23 P.3d 958, 961 (Okla. Civ. App. 2000). Likewise, plaintiffs have adequately alleged property to which a constructive trust could apply. *See Cacy v. Cacy,* 619 P.2d 200, 202 (Okla. 1980) (internal footnote omitted) ("The primary reason for imposing a constructive trust is to avoid unjust enrichment. A constructive trust is an involuntary or implied trust by operation of law.").

With respect to the fraud, tortious interference, and breach of fiduciary duty claims, plaintiffs argue that Ms. Andrews is vicariously liable for her co-conspirators under Oklahoma law and therefore allegations of independent tortious conduct by Ms. Andrews are unnecessary. [Doc.

13

73, pp. 12-14]. As an initial matter, the court notes that plaintiffs have not explicitly pled civil conspiracy under *Oklahoma* law. *See generally* [Doc. 2]. However, "[g]enerally, failure to set forth in the complaint a theory upon which the plaintiff could recover does not bar a plaintiff from pursuing a claim." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (quoting *Elliott Indus. Ltd. v. BP Am. Prod. Co.,* 407 F.3d 1091, 1121 (10th Cir. 2005)). "If the new theory prejudices the other party in maintaining its defense, however, courts will not permit the plaintiff to change [its] theory." *McBeth,* 598 F.3d at 716. Here, Ms. Andrews has not argued that she is prejudiced by plaintiffs' reliance on a state-law civil conspiracy theory. Further, the court notes that this matter is in its initial stages and no Scheduling Order has been entered. Thus, the court is satisfied that Ms. Andrews will not be prejudiced in maintaining a defense if plaintiffs are permitted to pursue a state-law civil conspiracy theory.

Under Oklahoma law, "[a] civil conspiracy consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means." *Brock v. Thompson*, 948 P.2d 279, 294 (Okla. 1997). "[C]ivil conspiracy itself does not create liability. To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means." *Brock*, 948 P.2d at 294; *see also Gaylord Ent. Co. v. Thompson*, 958 P.2d 128, 148 n.86 (Okla. 1998) ("A conspiracy between two or more persons to injure another is not enough; an underlying unlawful act is necessary to prevail on a civil conspiracy claim."). Each member of the conspiracy is responsible for the acts of his or her co-conspirators in furtherance of the conspiracy, and "[t]he gist of a civil action for conspiracy is damages and not the conspiracy." *Barsh v. Mullins,* 338 P.2d 845, 847 (Okla. 1959). Thus, "a civil conspiracy claim enlarges the pool of potential defendants from whom a plaintiff may recover for an underlying tort." *Hitch*

*Enters., Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1249, 1268 (W.D. Okla. 2012) (quoting *Brock*, 948 P.2d at 294 n.66).

Under Oklahoma law, "[t]he essential elements are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 175 (Okla. 2008) (quoting *Closs v. Goose Creek Consol. Indep. Sch. Dist.,* 874 S.W.2d 859, 871 (Tex. App. 1994)).

Here, as discussed above, the Complaint includes allegations from which the court may reasonably infer that Ms. Andrews, Mr. Andrews, Mr. Wilson, Titan Business, and others, agreed to defraud plaintiffs of monies through the use of multiple false invoices. [Doc. 2, p. 4, 8, ¶¶ 22, 24, 38-39]. Further, plaintiffs allege that Wilson and Rick's Repair, in fact, issued thirty-four fraudulent invoices—overt acts—in order to deprive plaintiffs of funds and that plaintiffs were damaged as a result. [Doc. 2, pp. 5-6, 9, ¶¶ 25-29, 43]. Based on the foregoing, plaintiffs have plausibly alleged that Ms. Andrews participated in a civil conspiracy to defraud plaintiffs. For the same reasons, plaintiffs have plausibly alleged that Ms. Andrews participated in a civil conspiracy to tortiously interfere with plaintiffs' employment relationship with Mr. Andrews and pursuant to which Mr. Andrews violated his duties of loyalty, competency and honesty to plaintiffs by agreeing to participate in the kickback scheme.[6] Thus, Ms. Andrews's motion, insofar as it seeks dismissal of the state-law claims, is denied.

---

[6] Under Oklahoma law, the elements of tortious interference with a contract are: 1) interference with a contractual right; 2) "malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference." *Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1165 (Okla. 2009). Similarly, the elements of breach of fiduciary duty are: "(1) the existence of a fiduciary relationship; (2) a breach of a fiduciary duty; and (3) the breach of a fiduciary duty was the direct cause of damages." *Orthman v. Premiere Pediatrics, PLLC,* 545 P.3d 124, 137 (Okla. Civ. App. 2024). Here, plaintiffs have

### IV. Conclusion

WHEREFORE, the Motion to Dismiss with Prejudice [Doc. 62] of defendant Kim Andrews is granted in part and denied in part. The motion is granted with respect to plaintiffs' First Claim for Relief – Civil RICO, 18 U.S.C. § 1962(b) and Second Claim for Relief – Civil RICO, 18 U.S.C. § 1962(c). The § 1962(b) and § 1962(c) claims are dismissed without prejudice. The motion is otherwise denied.

IT IS SO ORDERED this 7th day of October, 2025.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

---

plausibly alleged the existence of a contractual/fiduciary relationship between Mr. Andrews and plaintiffs, [Doc. 2, pp. 11-12, ¶¶ 60, 71], and interference with the relationship/breach of Mr. Andrews's duties, through the fraudulent kickback scheme, resulting in damage to plaintiffs.